**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE ) | |
| ) | |
| THEODORE A. THOMPSON, ) | |
| ) | Bankruptcy No. 08-02560 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION ON DEBTOR'S**
**MOTION FOR SANCTIONS AGAINST GMAC**

In this Chapter 13 bankruptcy case filed by Theodore Thompson ("Thompson" or "Debtor"), a panel of the Seventh Circuit Court of Appeals determined that when General Motors Acceptance Corporation ("GMAC") repossessed this Debtor's car prebankruptcy it violated the automatic stay under 11 U.S.C. § 362 by not returning the car after bankruptcy was filed. *Thompson v. Gen. Motors Acceptance Corp.*, 566 F.3d 699, 703 (7th Cir. 2009). Remand was ordered for determination of whether sanctions are warranted for failure to return the car. The parties now dispute whether the Debtor may recover damages under § 362(k) as a result of that stay violation. For reasons stated below, GMAC's violation entitles Thompson to recover his actual documented damages, but not fees of his counsel for their work on efforts to recover the car and the appeal.

**BACKGROUND OF UNDISPUTED FACTS**

Theodore A. Thompson works part-time as a youth worker and supplements his income as an entertainer at children's birthday parties. In April 2003, he financed purchase of a new 2003 Chevrolet Impala with GMAC. Public transportation was available but inconvenient, so Thompson used his vehicle to commute to work and to his occasional birthday parties. The contract between Thompson and GMAC required Thompson to make regular monthly payments of $398.55. He

eventually fell behind on those payments, prompting GMAC to repossess the vehicle. Shortly thereafter, on February 5, 2008, Thompson filed for bankruptcy.

After Thompson filed his bankruptcy case, GMAC refused to turn the vehicle back to Thompson on grounds that Thompson had not furnished GMAC with adequate protection. Thompson then moved for sanctions under 11 U.S.C. § 362(k), arguing that GMAC thereby willfully violated the automatic stay under § 362(a)(3) ("Motion for Sanctions"). That Motion was denied because GMAC had acted in accordance with rulings by several bankruptcy judges in the Northern District of Illinois, articulated in *In re Nash*, 228 B.R. 669 (Bankr. N.D. Ill. 1999), and *In re Spears*, 223 B.R. 159 (Bankr. N.D. Ill. 1998) that permitted a creditor to withhold property repossessed from the debtor before bankruptcy until the creditor received some form of adequate protection from the debtor. Thompson appealed that denial directly to the Seventh Circuit Court of Appeals.

On appeal, a panel of the Seventh Circuit reversed, holding that a creditor who passively holds on to a repossessed automobile that was an asset of the estate "exercises control" over the asset, a violation of the automatic stay. *Thompson*, 566 F.3d at 703. In light of that ruling, GMAC had violated the automatic stay in Thompson's bankruptcy case. *See id.* The Seventh Circuit panel then remanded the case for a determination whether GMAC's conduct was willful, such that Thompson might recover damages under 11 U.S.C. § 362(k). *Id.* at 708.

An evidentiary hearing was initially held on October 22, 2009, before the undersigned judge,[1] at which Thompson testified to damages he incurred while possession of his car was withheld until the ruling on appeal. A second hearing was held on February 12, 2010, on court's order <u>sua sponte</u>

---

[1] This case is assigned to another Bankruptcy Judge who was unable to hear the matter on the scheduled date, so the hearing was reassigned to and held before the undersigned.

2

for more evidence as to whether Thompson's attorneys had waived their right to collect attorneys' fees from their client, or whether their fees could still be considered damages to Thompson under § 362(k). The GMAC Motion to vacate the order for further hearing was orally denied for reasons to be set forth here. At that hearing, both Thompson and one of his attorneys gave more evidence about their agreement concerning fees.

Additional facts set forth in the following Discussion are also undisputed.

## DISCUSSION

The automatic stay prevents creditors from taking actions to collect a debt from a debtor who has filed for bankruptcy. *See* 11 U.S.C. § 362(a). This stay "has been described as one of the most fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (internal quotations omitted). If a creditor willfully violates the stay, then an individual harmed by that violation is entitled to recover "actual damages, including costs and attorneys fees, and in appropriate circumstances, may recover punitive damages." § 362(k)(1).

### I. GMAC's Violation of the Stay Was Willful

To recover damages for violation of the automatic stay under 11 U.S.C. § 362(k), a debtor must show that the creditor's violation was willful. *Thompson v. Gen. Motors Acceptance Corp.*, 566 F.3d 699, 708 (7th Cir. 2009). A stay violation is willful when the creditor (1) has actual notice of the bankruptcy filing and (2) commits a deliberate act when it violated the stay. *In re Will*, 303 B.R. 357, 363–64 (Bankr. N.D. Ill. 2003).

GMAC does not dispute that it had actual notice of Thompson's bankruptcy or that it committed a deliberate act when it refused to turn over the vehicle to Thompson's estate. However,

it argues a "good faith" exception, relying on *In re University Medical Center*, 973 F.2d 1065, 1088 (3d Cir. 1992) (holding that good faith reliance on persuasive legal authority does not give rise to a willful violation). Under that proposed exception, GMAC's violation would not be willful because GMAC relied on consistent rulings by bankruptcy judges in the Northern District of Illinois that had been articulated in *In re Nash*, 228 B.R. 669 (Bankr. N.D. Ill. 1999), and *In re Spears*, 223 B.R. 159 (Bankr. N.D. Ill. 1998).

GMAC's proposed "good faith" exception cannot be recognized in this case. An exception of that nature would excuse the creditor's conduct based on that creditor's subjective belief that it was not violating the stay. However, Seventh Circuit authority has long held that "[a] 'willful violation' does not require a specific intent to violate the automatic stay." *In re Price*, 42 F.3d 1068, 1071 (7th Cir. 1994). Moreover, "[i]n determining whether a stay violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue." *In re GGSI Liquidation Inc.*, 355 B.R. 691, 701 (Bankr. N.D. Ill. 2006) (*citing In re Ramirez*, 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)). "Not even a good faith mistake of law or a legitimate dispute as to the legal rights relieve a willful violator of the consequences of his act." *Id.* (*quoting Ramirez*, 183 B.R. at 589).

Moreover, a "good faith" exception would not respect the decision by a panel of our Circuit Court of Appeals that the former rulings by bankruptcy judges were unsound, and respect for that determination must have consequences. Because GMAC concedes that it knew of Thompson's bankruptcy filing and that it acted deliberately in refusing to turn over the vehicle to Thompson's estate, GMAC willfully violated the automatic stay.

4

## II. Reopening the Record for Further Evidence on the Agreement Between Thompson and His Attorneys Regarding Attorneys' Fees

After evidence initially closed, the hearing was reopened on initiative of the undersigned *sua sponte* so that more precise evidence could be taken on the issue of whether or not Thompson's lawyers had waived their fees as GMAC contended. GMAC objected and moved to vacate the reopening order. That Motion was orally denied for reasons to be set forth in this opinion.

Reopening the record to permit additional proof is within the sound discretion of a trial judge. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331–32 (1971); *Kafka v. Truck Ins. Exchange*, 19 F.3d 383, 389 (7th Cir. 1994). This may be ordered *sua sponte*, but "[n]onetheless, 'it is not the business of a court to make additions of evidence in a submitted case on its own motion other than as there may be some element of such probative importance that its addition will prevent a miscarriage of justice from occurring in the situation.'" *United States v. Dico, Inc.*, 266 F.3d 864, 873 (8th Cir. 2001) (*quoting Arthur Murray, Inc. v. Oliver*, 364 F.2d 28, 34 (8th Cir. 1966)).

The evidence presented at the hearing held on October 22, 2009, did not clearly show whether or not the attorneys' fees sought by Thompson could be considered "actual damages" to Thompson under 11 U.S.C. § 362(k). The principal issue in dispute here was the claim for very large attorneys' fees claimed as asserted "damages" for work in attempting to recover the car. Ruling without clear evidence on such a major probative issue would have been a miscarriage of justice in this case.

GMAC argued that evidence presented at the first hearing conclusively proved that Thompson's attorneys waived their right to collect any fees from Thompson. The only witness who testified on this issue at the first hearing was Thompson himself, a youth worker and entertainer, not

5

a lawyer. His testimony on the subject did not clarify what agreement he had with his attorneys: he variously said that his attorneys had waived their fees, that he did not owe them anything, and that they had an agreement that he would not be responsible for fees. His attorneys also offered to stipulate that they did not have a written contract for services on appeal.

This evidence at the first hearing only demonstrated that Thompson understood that he himself was not to pay anything to his attorneys. It did not prove whether or not Thompson's attorneys had actually waived their rights to be paid fees. Based on that original evidence, it remained possible that Thompson's attorneys told him that he would owe but would not have to pay any attorneys' fees because they would collect from GMAC whatever fees for which Thompson was legally responsible. Because that original evidence was not sufficient to find whether the agreement between Thompson and his attorneys comprised a waiver of fees as GMAC contended, or something else as Thompson's lawyers contended, it was necessary to reopen the record for further testimony by Thompson and his attorneys. As it turns out, that further evidence as referred to below helped GMAC.

### III. Thompson Is Not Entitled to Recover Attorneys' Fees as Damages Because He Was Not Legally Responsible for Any Attorneys' Fees

An individual injured by a willful violation of the automatic stay may recover "actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). Such actual damages may include attorneys' fees and expenses that a debtor incurs to enforce the stay and to remedy the violation. *See Sternberg v. Johnston*, Nos. 07-16870, 08-15721, 2010 WL 424811, at *10 (9th Cir. Oct. 1, 2009, amended Oct. 22, 2009, second amendment Feb. 8, 2010); *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008). It may also include fees incurred in prosecuting a damages action under

11 U.S.C. § 362(k). *Repine*, 536 F.3d at 522; *In re Will*, 303 B.R. 357, 366 (Bankr. N.D. Ill. 2003). *But see Sternberg*, 2010 WL 424811, at *7–10 (following the American Rule of damages, actual damages under § 362 do not include litigation fees and expenses).[2] The debtor need not have actually paid the fees before they can be recovered. *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008). Recoverable fees can even be contingent upon the attorneys' success in the litigation. *In re GGSI Liquidation Inc.*, 355 B.R. 691 (Bankr. N.D. Ill. 2006) ("Contingent fees are properly held to represent a party's actual damages resulting from obligations to pay attorneys.").

However, § 362(k) is not a typical fee-shifting statute. It "... does not provide for an award of attorney's fees. It provides that a debtor injured by a willful violation of the stay may recover attorney's fees to the extent that they are part of her damages." *In re Siharath*, 285 B.R. 299, 306 (Bankr. D. Minn. 2002) (discussing 11 U.S.C. § 362(h), the pre-2005 version of § 362(k)). "In other words, § 362([k]) provides for recovery of damages *including* attorney's fees, not damages *and* attorney's fees." *Id.* (emphasis in original).

A comparison to other fee-shifting statutes illustrates this point. In certain civil rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Under such a statute, attorneys' fees may be awarded regardless of whether the prevailing party is legally responsible for those fees. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (fees can be awarded to plaintiff represented by private counsel or by nonprofit counsel charging no fee). Other statutes similarly authorize the

---

[2] Because attorneys' fees will not be allowed in this case for other reasons, this Memorandum Opinion does not address (1) whether attorneys' fees incurred in prosecuting a § 362(k) action are properly recoverable as actual damages or (2) whether the attorneys' fees sought in this case are properly characterized as having been incurred in enforcing the stay or in prosecuting the § 362(k) action.

7

recovery of "reasonable" attorney fees. *See Wis. v. Hotline Indus., Inc.*, 236 F.3d 363, 366–67 (7th Cir. 2000) (*citing Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 (1986); *Marek v. Chesny*, 473 U.S. 1, 43–51 (1985) (appendix to Brennan, J., dissenting)). The purpose of these statutes is "to encourage lawyers to take meritorious cases and thereby promote private enforcement of the law." *Id.* (*citing Del. Valley*, 478 U.S. at 560; *Blum*, 465 U.S. at 893–94).

A few fee-shifting statutes, however, allow recovery of only those attorneys' fees for which a party is actually responsible. *Hotline Indus.*, 236 F.3d at 367. For example, the fee-shifting provision of the statute governing improper removal of a state court case to federal court provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Because that statute was intended to reimburse victors for legal fees incurred as a result of improper conduct by their adversaries, it "expressly limits fee awards to actual outlays" and excludes recovery for attorneys' fees not actually incurred by the prevailing party. *Hotline Indus.*, 236 F.3d at 367.

The language of 11 U.S.C. § 362(k)(1)—that a party may recover "actual damages, including costs and attorneys' fees"—more closely tracks the language of the removal statute than that of the civil rights statutes. The purpose of § 362(k)(1) is also similar to that of the removal statute: to restore this debtor to the actual financial position he would have occupied had the defendant not violated the stay. *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). Under § 362(k)(1), therefore, Thompson may only recover attorneys' fees for which he is actually responsible. *See In re Hedetneimi*, 297 B.R. 837, 843 (Bankr. M.D. Fla. 2003) (debtor represented by pro bono firm may not recover attorneys' fees under predecessor to § 362(k) because debtor was not responsible for those fees).

When Thompson originally hired attorneys to file his bankruptcy case, he entered into a written contract with those attorneys. That contract provided that Thompson would pay a total fee of $3,500 in exchange for the standard services provided by attorneys in the Northern District of Illinois in Chapter 13 bankruptcy cases. The contract also provided that Thompson's attorneys could seek additional compensation for non-standard services, which might have included appeals of adverse rulings.

Despite this contract, under which Thompson was initially liable for the $3,500 and possibly for any fees for an appeal, Thompson's attorneys subsequently waived all their fees related to the dispute with GMAC and the then-forthcoming appeal. After the Motion for Sanctions was denied by the Bankruptcy Judge, Thompson met with his attorneys to discuss the possibility of appealing that decision. At that meeting, his attorneys told him that they thought he had a strong chance of winning on appeal, and that, because of his financial condition, he would not be responsible for any more attorneys' fees for the bankruptcy case (he had already paid $350) or for the appeal. They explained, based on their understanding of the law, that they would be able to recover any attorneys' fees from GMAC. Thompson testified at the post-appeal evidentiary hearing on sanctions to his understanding that he would not owe and would never be responsible to pay any attorneys' fees for the appeal whether or not GMAC paid any such fees, and his attorney testified that Thompson was told he would not have to pay such fees. Moreover, immediately after coming to this new agreement, Thompson's attorneys withdrew their then pending fee application they had filed for their work in the bankruptcy case which was based on the agreement allowing extra payment for unusual work.[3]

---

[3] Trial Tr. Oct. 22, 2009, at pp 27-36 (Thompson); Trial Tr., Feb. 12, 2010, at pp. 17-31, and 37-40 (Debtor's attorney Black) and pp. 42-43 (Thompson); and Dep. of Thompson admitted into evidence Feb. 12, 2010, Tr. Sept. 23, 2009 at Tr. pp. 41-52. See quoted testimony in Appendix to this Opinion.

9

The foregoing evidence clearly established that Thompson's attorneys waived any right to collect attorney fees from Thompson. Thompson is not legally responsible for any attorneys' fees related to the effort by his counsel to recover the car through the original Motion and resulting appeal. Therefore, he cannot collect any fees from GMAC as "actual damages." The $350 paid to his lawyers before his bankruptcy case was filed cannot constitute actual damages because GMAC's violation of the automatic stay did not occur until after the case was filed, when the stay was in effect.

Counsel representing bankruptcy debtors have clients who usually cannot fund appeals. If they proceed carefully, they can preserve a fee claim under § 362(k) while assuring the client that he will not have to pay that fee. Thompson's attorneys could have entered into a clear written agreement providing that the fees were to be due from him but contingent upon success of the appeal and collection from GMAC. By doing so, they could have eliminated Thompson's risk of payment while also ensuring that Thompson actually incurred damages in the form of attorneys' fees that were due from the client, albeit to be collected from the creditor. But instead, Thompson's attorneys completely and totally waived their fees, and therefore fees claimed for work on the motion and appeal cannot constitute actual damages of Thompson recoverable from GMAC.

Even if Thompson had been legally responsible for the fees of his attorneys for the appeal, most of the fees sought in this case could not have been collected because the lawyers did not adequately prove them. At the evidentiary hearing, there was no testimony at all about attorneys' work and fees warranted for that work, and no offer of any exhibit detailing the work and fees claimed. Instead, one of GMAC's exhibits was relied on (which was admitted over GMAC's objection). However, that exhibit was insufficient under Rule 2016 Fed. R. Bankr. P., which

requires "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The exhibit did list the tasks performed, the total time spent on each task, the person who performed each task, the hourly rate of that person, and the total fee attributable to each person. But rather than specifying the dates when work was performed and the tasks on each date, it lumped each task together, showing only the total cumulative time spent on each task. That inadequacy, coupled with lack of testimony, cast serious doubt on the large amount of fees that were claimed. However, since no fees are due from Thompson, questions as to what amount might be allowed if any were due need not be decided.

### IV. Thompson Is Entitled to Actual Damages for Car Rental and Gas Expenses

To recover actual damages for a willful violation of the stay, a debtor must show the amount of damages with reasonable certainty. *In re Sumpter*, 171 B.R. 835, 844 (Bankr. N.D. Ill. 1994) (*citing Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir. 1992)). A damage award cannot be based on mere speculation, guess, or conjecture. *Id.* (*citing Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 930 (7th Cir. 1985)).

At the evidentiary hearing, Thomson testified that GMAC's refusal to return the vehicle forced him to use a car service three to four times a week, costing him $12 for a one-way trip or $25 for a round trip. He also testified that he missed five to ten birthday parties that he had booked because he could not obtain suitable transportation, and that he would have earned approximately $200 at each event. However, Thompson did not have records showing dates and contracts for missed engagements, and did not provide any receipts, records, or other documents to support those claims. Therefore, they cannot be allowed as actual damages.

11

Thompson did produce concrete evidence of other damages, however. He testified that he rented cars on several occasions, and provided receipts for $605.28 of rental expenses. He also presented a receipt for $118 from Enterprise to a Robert Thompson rather than in Debtor's name. Based on Debtor's testimony that is an allowed damage, the evidence being understood to show that he either paid that bill or reimbursed payment by another. In addition, Thompson testified that he bought gas for friends in exchange for rides. In support, he presented his bank statements, showing debits at various gas stations after he filed for bankruptcy totaling $490.88.

Because he presented sufficient evidence of the foregoing expenses, Thompson is entitled to actual damages totaling $1,214.16.

## V.  Punitive Damages Are Not Warranted

In appropriate circumstances, an individual injured by a willful violation of the automatic stay may recover punitive damages. 11 U.S.C. § 362(k)(1). Relevant circumstances to be considered in that regard include: "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *In re GGSI Liquidation, Inc.*, 351 B.R. 529, 600 (Bankr. N.D. Ill. 2006). Punitive damages do not compensate a plaintiff for losses; rather, "they are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (*citing Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001)). "An award of punitive damages, however, must be supported by the record and may not constitute a windfall to the prevailing party." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995) (*citing Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1314 (7th Cir. 1985)).

Punitive damages are not warranted in this case. First and most importantly, GMAC did not have a malicious motive. When it refused to turn over Thompson's vehicle, it was acting in accord with opinions by several Bankruptcy Judges in the Northern District of Illinois. Those opinions did not have precedential weight and were no more than law of each case in which the practice was followed. However, most Bankruptcy Judges in this District had taken the view that those opinions represented a correct statement of the law until the recent Seventh Circuit opinion in this case held otherwise.

Second, the nature of GMAC's action does not merit deterrence or punishment. GMAC repossessed a vehicle prebankruptcy, an act within its contractual rights, and passively held the car after this bankruptcy case was filed. No egregious conduct occurred: the peace was not breached, and no one was coerced or threatened. Moreover, the decision on appeal itself is likely sufficient to deter GMAC from repeating its actions in the future within this Circuit.

Other possible considerations are not relevant in this case. GMAC does not argue that Thompson provoked the stay violation. Moreover, while there is no evidence as to GMAC's ability to pay, even if evidence of that nature were presented, punitive damages would not have been warranted: such damages should not be awarded solely because the defendant can afford them.

For the foregoing reasons, Thompson will not be allowed punitive damages for what must otherwise be found to have been GMAC's willful violation of the automatic stay.

## CONCLUSION

For the foregoing reasons and by separate order:

A.     GMAC's Motion to Vacate the Order Setting Further Hearing will be denied.

B.     GMAC will be found to have willfully violated the automatic stay.

C. Thompson's Motion will be denied to the extent it seeks punitive damages.

D. Thompson will be allowed actual damages totaling $1,214.16 for car rentals and gas expenses.

E. Thompson will not be allowed an award of damages for attorneys' fees, or for other expenses claimed.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___19___ day of March, 2010.

## APPENDIX TO OPINION

### TRIAL TR. OCT. 22, 2009

#### Thompson Testimony

| | | |
|---|---|---|
| PP. 27-29 | Q. | ... And after your Chapter 13 plan was confirmed, the Semrad firm waived their attorneys' fees, right? |
| | A. | Yes. |
| | COURT: | ... [D]o you owe them any more? |
| | A. | According to what they mentioned to me in our discussion, I don't owe them any more.<br>... During the time when we had that actual discussion, they said they were waiving my fees. |
| P. 30 | Q. | ... [W]ho were you speaking to? |
| | A. | It may have been Craig Black. |
| PP. 35-36 | Q. | Mr. Thompson is not responsible for any of the work that the Semrad firm did whether in the bankruptcy case, in the adversary case, or on the motion for sanctions ...<br>Isn't that right Mr. Thompson? |
| | A. | According to our -- yes, yes. Yes. |
| | Q. | So you haven't incurred any damages in the form of attorneys' fees, have you? |
| | A. | No. |

### TRIAL TR. FEB. 12, 2010

#### Attorney Black Testimony

| | | |
|---|---|---|
| P. 17 | Q. | Mr. Black, would you inform the court what you told Mr. Thompson? |
| | A. | During the discussion with Mr. Thompson, which was around the confirmation hearing, I had informed him that we were going to withdraw our fee application regarding the fees that we had applied for in his Chapter 13 |

15

|  |  |  |
|---|---|---|
|  |  | case. The motion for sanctions had been denied at that point, and I went on to discuss with him the possibility of an appeal. And I went on to tell him that under the statute we would be entitled to recover our fees for the time that we were going to spend on the appeal and that he wouldn't have to come out-of-pocket with the expenses. And due to then nature of the statute and what, you know, we thought was GMAC's violation of the stay that we would recover our fees from GMAC. |
|  | Q. | At what point did you withdraw the fee application in the underlying Chapter 13? |
|  | A. | I believe it was at the confirmation hearing around June. |
| P. 24 | Q. | Debtor's Exhibit 24, what does it state that attorneys' fees will be for the debtor in question? |
|  | A. | It indicates the debtor has agreed to pay us 3,500 with respect to matters relating to his Chapter 13 case. |
|  | Q. | Are there any other conditions in the contract that relate to fees? |
|  | A. | Yes. It further goes on to state that the 3,500 only covers services related to the Chapter 13 plan. And then it further goes on and states that we reserve the right to apply for additional compensation if there's extraordinary circumstances. And then it specifically speaks of adversary hearings, evidentiary hearings, and appeals. |
| PP. 37-38 | Q. | Mr. Black, has Mr. Thompson agreed to pay the Semrad firm fees for its appeal of the judge's decision on the motion for sanctions? |
|  | A. | Under the contract that we entered into, yes, he did agree to pay for appeals. |
|  | Q. | So your contention is that is the contract that's been marked as Exhibits 24, 25, and 26? |
|  | A. | Those would be the one, yes. |
|  | Q. | That's the contract that says in extraordinary circumstances, such as extended evidentiary hearings or appeals, the attorney may apply to the court for additional compensation for these services, right? |
|  | A. | I believe it says "reserves the right". |

|   |   |   |
|---|---|---|
|   | Q. | Okay. And the Semrad firm did not apply to the court for any additional compensation, did it? |
|   | A. | Well, in the normal course, we wouldn't apply for the fees until the thing has been resolved. We're still litigating this. |
|   | Q. | There has been no application as of this date that you're aware of, right? |
|   | A. | No. |
| P. 40 | Q. | Mr. Black, prior to today did your firm ever plan on collecting any fees or demanding payment of any appellate fees from Mr. Thompson? |
|   | A. | No |

<u>Thompson Testimony</u>

| | | |
|---|---|---|
| PP. 42-43 | Q. | If GMAC doesn't have to pay the Semrad firm's attorneys' fees, your understanding is that you don't have to pay them either, right? |
| | A. | That's my understanding of it. |
| | Q. | And your understanding is based on your conversation with Mr. Black, right? |
| | A. | Not a -- yes. |
| | Q. | Yes, it is? |
| | A. | Yes. |

**DEPOSITION OF THOMPSON, SEPT. 25, 2009**

| | | |
|---|---|---|
| P. 49 | Q. | . . . But anyhow, the Semrad firm told you they were going to waive their fees. |
| | A. | Correct . . . It was a relief to me. |
| | Q. | So after confirmation of your plan, did you owe the Semrad firm any additional fees? |
| | A. | No. |

17

P. 51     A.     . . . What your asking is that - - what you're saying is did I put money aside to put toward the sanctions plan?

Q.     You got it.

A.     An the . . . answer to the question is no.

Q.     Okay.

A.     . . . because all my fees were waived.

. . .

Q.     So there weren't any side agreements between you and the Semrad firm to pay their fees?

A.     No.

P. 52, line 9     A.     . . . That was our agreement. and they said, "your fees are waived. You don't have to pay anything else . . . .